# AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

I, Michael Hand, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Secret Service (USSS) and have been since June 1998. I have a Bachelor of Arts degree in Political Science from The Citadel in Charleston, SC. I received training at the Federal Law Enforcement Training Center in Glynco, GA and at the USSS Training Center in Beltsville, MD, as to the techniques and methodology of general law enforcement and financial crimes investigations. While previously assigned to the USSS Columbia Field Office I was assigned to the South Carolina Computer Crimes Center (SCCCC). The SCCCC was comprised of agents from the USSS as well as other local, state and federal officers and agents. I am currently assigned to the USSS Greenville Resident Office where I am tasked to investigate financial crimes.

2. This investigation is being conducted jointly by the USSS Greenville Office and the Greenville City Police Department (GPD). The information contained in this affidavit is based, in part, on my personal knowledge and observations during the course of this investigation and information provided to me by cooperating sources and other law enforcement agents/officers. Additionally, this affidavit is based on my training and experience as well as that of other law enforcement agents/officers assisting in this investigation. I have set forth only the facts that I, or collectively the other agents/officers involved in this investigation, know and believe which are necessary to establish probable cause to believe that evidence exists of violations of **18 U.S.C. § 1341**.

## STATUTORY AUTHORITY

3. This investigation concerns violations of **18 U.S.C. § 1341**, *which prohibits the use of the US Postal Service for obtaining money or property in the execution of a fraudulent scheme.*

## SUMMARY OF PROBABLE CAUSE

4. CLYDE ANTHONY MURCHISON, III, informed the victim that they could purchase Morgan Silver Dollars from the Federal Reserve Bank in San Francisco, California, melt the coins down, and sell the silver for far in excess of the purchase price. The victim agreed to participate in this investment opportunity and gave CLYDE ANTHONY MURCHISON, III, $1,075,000.00 for the purchases of Morgan Silver Dollars. MURCHISON provided the victim false documentation indicating that the Morgan Silver Dollars had been purchased as promised. When the victim expressed reservations about the investment and requested a refund of his money, MURCHISON assured the victim that a refund would not be a problem and that he would repay the victim via large certificate of deposit held at Bank Leumi in Israel. MURCHISON created false documents showing the existence of the certificate of deposit and his efforts to transfer or redeem the certificate to repay the victim. Some of these documents MURCHISON sent via United States Postal Service to the victim.

## CURRENT INVESTIGATION

5. In November 2021, Det. M. Dean from the Greenville City Police Department (GPD) contacted the USSS Greenville Office regarding a report filed by Mr. Robert G. Bannister, the victim in this case. Det. Dean summarized that Bannister had told of his suspicions that he was the victim of a fraudulent investment scheme being perpetrated by an individual he knows as Clint MURCHISON. Bannister told Det. Dean that he had given $1,075,000.00 to MURCHISON with the understanding that the money was to be used for the purchase of Morgan Silver Dollars directly from the Federal Reserve Bank in San Francisco, CA. Bannister stated the money had been given to MURCHISON in July 2021 and August 2021, but that he (Bannister) had not received any of the promised coins or any returns on his investment and now believed that MURCHISON had defrauded him of his money. Bannister also stated that the initial $75,000 given to MURCHISON in July 2021 was all cash and that the $1,000,000 given in August 2021 was with a personal check. Det. Dean contacted the USSS Greenville Office and asked for their assistance in this investigation.

2

6. In early December 2021, Bannister again met with investigators that included Det. Dean and your Affiant. Bannister told investigators that he knows MURCHISON as "Clint ". Bannister knows MURCHISON socially and had been acquainted with him for a few years. Bannister explained that he met MURCHISON through Susan Diane Wade Murchison, his wife, and that they were all members of a local shag dance club that meets at the Brass Monkey on Congaree Road in Greenville, SC. Bannister, who is a retired military pilot and a retired commercial pilot, stated that he and MURCHISON would spend a lot of time talking while at the club and that MURCHISON had told him he was a retired Navy pilot who had also worked with/for the CIA. Bannister stated that because he believed MURCHISON was former military and seemed to be a good person that he believed the things that MURCHISON told him, or at least had no reason to doubt them.

7. Bannister told investigators that sometime in mid-2021 he sold a piece of property and as a result had $26,000 in cash. Bannister stated he told MURCHISON about this one evening at the club. MURCHISON then told Bannister that he knew a way to make a large amount of money if Bannister was interested in investing. MURCHISON told Bannister that the plan would be to order Morgan Silver Dollars directly from the Federal Reserve Bank in San Francisco, CA. After receiving the coins, they (MURCHISON and Bannister) could then have them melted down for the silver content, which is worth more than the face value of the coins. After this conversation, Bannister agreed to invest with MURCHISON and eventually gave him $75,000 in cash for his half of the investment. MURCHISON told Bannister that he would also invest $75,000 of his own money for a total investment and purchase of $150,000. Bannister could not remember the exact dates that he gave MURCHISON the $75,000 in cash but estimated it to be sometime mid-July 2021. Bannister stated he gave MURCHISON the cash at the Brass Monkey in Greenville, SC. Bannister stated he assumed that MURCHISON would place the order for the coins and handle all details of the purchase and shipping.

8. Bannister told investigators that on 8/2/21 he received an email from MURCHISON. Attached to this email was what appeared to be a letter from Mark Gould at the San Francisco Federal Reserve (SFFRB). This letter, which was also dated 8/2/21 and addressed to C.A. Murchison, confirmed the order of Morgan Silver Dollars and the full payment of $150,000 made through Wells Fargo Bank. The letter indicated a shipping date of 8/18/21 and that the

3

coins would be shipped to the Wells Fargo Bank, 15 South Main Street, Greenville, SC 29601. This letter also referenced an additional order of Morgan Silver Dollars for $3,000,000 with a $30,000 deposit being paid. The remaining balance due was to be paid by 10/29/21. It was noted that the originating email address was ▮▮▮▮▮▮▮▮▮▮ (MURCHISON) and that the receiving email address was ▮▮▮▮▮▮▮▮▮▮ (Bannister). It was also noted that the attachment was titled *"Fed Morgan Dollar Order.jpg"*. Based upon this email, Bannister assumed that MURCHISON had done what he said he was going to do and all was going according to the plan.

9. Within a couple of weeks, in order to proceed with the next purchase of Morgan Silver Dollars for $3,000,000, Bannister cashed out a Certificate of Deposit he held at Pen Air Federal Credit Union (PAFCU) in Pensacola, FL. The value of this CD at the time was approximately $1,035,000. MURCHISON had told Bannister that in order to come up with his part of the money he was going to cash in his Amazon stock. Again, based on what he was shown and told by MURCHISON, Bannister believed that this was a legitimate investment and that MURCHISON could be trusted to handle it properly.

10. Bannister also provided investigators with additional letters purportedly from Mark Gould (SFFRB) that continued to show communications between MURCHISON and Gould regarding the orders for Morgan Silver Dollars. The letters are summarized below:

    - Letter dated 8/16/21 in which Gould again confirms the order for $150,000. Gould also confirms the SFFRB has received the wire from MURCHISON in the amount of $3,380,000 for the second order of coins.

    - Letter dated 8/19/21 in which Gould confirms the shipment of the original $150,000 order of coins and says that the SFFRB is processing the second order.

    - Letter dated 8/27/21 in which Gould confirms the receipt of another wire from MURCHISON in the amount of $2,620,000 for another purchase of Morgan Silver Dollars. Gould also confirms that $3,530,000 order will be shipped the next week. Gould advises that Wells Fargo Bank in Greenville, SC should receive the initial shipment

4

of the coins ($150,000 order) within the next 7-10 days.

- Letter dated 9/14/21 in which Gould again confirms the 3 separate orders for Morgan Silver Dollars and the amounts of money received from MURCHISON.

11. On 8/30/21, Bannister received a wire transfer deposit of $1,035,707 into his personal bank account at Wells Fargo Bank, account #XX9938. This deposit is the sum he received when liquidating his Certificate of Deposit at PAFCU. On 8/31/21, Bannister meets with MURCHISON at the Cracker Barrel Restaurant in Powdersville, SC and gives him a personal check, #0099, drawn on account #XX9938, for $1,000,000. Bannister believes he is doing this in order to pay for his portion of the second order of Morgan Silver Dollars made by MURCHISON.

12. Bannister told investigators that he began to have suspicions about MURCHISON and the entire investment scenario after contacting the Wells Fargo Bank located at ▇▇▇▇▇▇▇▇▇▇▇▇▇ in Greenville, SC. Bannister stated he spoke with the branch manager and inquired about arranging a time to come and personally inspect the large number of boxes containing the Morgan Silver Dollars shipped there on behalf of him and MURCHISON. Bannister stated he was told that Wells Fargo did not have a large quantity of Morgan Silver Dollars they were holding for him or MURCHISON and that the bank did not even have a vault for such purposes. Upon learning this information, along with other information about MURCHISON, Bannister decided to tell MURCHISON that he wanted to back out of the investment deal. Bannister stated he told MURCHISON that he only wanted to be re-paid what he had invested ($1,075,000) and that MURCHISON could keep all of the coins and any future money made from them.

13. Bannister told investigators that MURCHISON was originally agreeable to this idea and even offered to pay Bannister $1,200,000, which is more than he had invested. MURCHISON told Bannister that he had a large Certificate of Deposit held at Bank Leumi in Israel and that he would either liquidate the CD and give the funds to Bannister or he would have Bank Leumi assign the ownership of the Certificate to Bannister, thereby re-paying Bannister for his investments.

5

14. This began a long series of emails that were forwarded to Bannister by MURCHISON. These emails were of various and different conversations that MURCHISON was purportedly having with people who purportedly worked for financial institutions or brokerage firms such as Mark Gould at the San Francisco Federal Reserve Bank ▮▮▮▮▮▮▮▮ J. Phillip Bell at Barclay's Global Investor's Group ▮▮▮▮▮▮ Dan Creps at LPL Financial USA ▮▮▮▮▮▮▮▮▮▮ and someone named "Omar" at QIA Investments ▮▮▮▮▮▮▮▮▮▮▮ among others. The general theme of these emails was MURCHISON explaining to these different people and companies that Bannister no longer wanted any part of the Morgan Silver Dollar investments and that he (MURCHISON) was working on a plan to sell all of the coins by himself. Bannister has provided copies of these emails to investigators and they have been reviewed by your Affiant. Based on my review, it appears that these emails are not genuine based upon the wording and the suspicious email addresses. It is my experience that an individual who works for a legitimate and reputable organization, such as the Federal Reserve Bank or LPL Financial, would not use a business email address ending in *.net* or *.gmail* when conducting business. It is also my opinion, based on my experience in the investigation of fraudulent schemes such as this, that these email addresses identified in this paragraph were created, controlled, and used by MURCHISON in the furtherance of his scheme and that some records of these emails and email addresses will be found on the electronic devices sought during this search.

15. These emails and the information they contained also raised suspicions with Det. Dean and he contacted investigators with the Federal Reserve Bank – Office of Inspector General (FRB/OIG) to determine the legitimacy of these emails between a Mark Gould and MURCHISON. The inquiry by Det. Dean caused the FRB/OIG to conduct their own internal investigation, the results of which they have shared with law enforcement in this investigation. FRB/OIG investigators did confirm that Mark Gould is an actual employee of the San Francisco Federal Reserve and is the Chief Payments Executive for the Federal Reserve Financial Systems. FRB/OIG also spoke with Gould regarding these alleged letters and emails sent by him to MURCHISON. Gould told the FRB/OIG investigators that he did not send the emails in question, did not write the letters that were attached to the emails, and that it was not his signature that appeared on the letters. Gould further stated that the Federal Reserve was not involved in the sale or transfer of Morgan Silver Dollars and

6

that the Federal Reserve did not administer accounts for individuals, they only deal with banks. Gould also pointed out to investigators that the letterhead logo was not in the proper position on the paper, that the signature block was not in the proper place on the paper, and that the signature block would have his name listed as "Mark A. Gould", not just "Mark Gould". Gould also provided signature exemplars for comparison with the signatures on the letters.

16. Investigators also were able to determine that Dan Creps is an actual person who works as a financial advisor for GoodLife Financial Advisors in Greenville, SC. Your Affiant spoke in person with Creps in mid-December regarding the emails allegedly sent between him and MURCHISON in which they discussed the Certificate of Deposit held by MURCHISON at Bank Leumi in Israel. Creps stated that MURCHISON was a client of GoodLife Financial and that he had known MURCHISON for at least a couple of years. Creps did not discuss in any detail the financial dealings or holdings of MURCHISON as they relate to GoodLife Financial. Creps stated that he knew nothing about a Certificate of Deposit at Bank Leumi and was not assisting MURCHISON in any way regarding that transaction. I showed Creps emails that were supposedly sent by him to MURCHISON and asked him if the email address that was shown, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was indeed his. Creps stated that this was not his email address and that he had never seen nor used it. Creps confirmed that his business email address is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that he would never use a personal email account or address to conduct business.

17. On or about 12/20/21, Bannister informed your Affiant that he was expecting delivery of some documents mailed to him by MURCHISON regarding the assignment of the Certificate of Deposit purportedly held by MURCHISON at Bank Leumi. I instructed Bannister to inform me when he had this mailing in his possession and not to open it until I was able to be present with him. Bannister agreed to do this. On 12/22/21, I met with Bannister at his residence and he gave to me the unopened mailing envelope. I examined the exterior of the envelope and determined it to be a US Postal Service Priority Mail Express envelope with a postmark dated 12/20/21. The sender was identified as "C. Murchison, ▮▮▮▮▮▮▮ Taylors, SC 29687". The receiver was identified as "Gary Bannister, ▮▮▮▮▮▮▮▮▮▮ Anderson, SC 29626". It was noted that the package was mailed from the US Post Office in Greenwood, SC.

7

18. Continuing, Bannister allowed me to open the envelope and examine the documents inside. The envelope contained several documents that, on first appearance, seemed to be official and legitimate while referencing the assignment of a certificate of deposit from MURCHISON to Bannister. Some of the documents purported to be from Bank Leumi while others were from Barclay's Bank. One of the documents bore the signature of an "Alex Klein", who was identified as Senior VP with Bank Leumi. There was also a document that contained the personal identifying information for "C.A. Murchison". Bannister also reviewed these documents and then allowed me to keep them as evidence in this investigation until their authenticity could be determined.

19. On 1/13/21, your Affiant spoke with C. Gawley, LeumiUSA, regarding these mailed documents discussed above, which I had previously provided to Bank Leumi for their examination and authentication. Gawley confirmed that Bank Leumi had conducted a thorough search of all bank records and could find no information indicating that MURCHISON was or ever had been a customer or client of Bank Leumi and held no accounts there, Certificates of Deposit or otherwise. Gawley also stated that the documents in question were not authentic and appeared to him to be a "mish-mash" of different documents obtained from different places at different times and then put together to appear legitimate. Gawley stated the most telling signs to him that the documents were fake was the interest rate being offered (%2.25) and the fact that there was no copy of the certificate. Additionally, Gawley confirmed that Alex Klein is a real employee of Bank Leumi and that Klein was contacted regarding these forms. Klein stated he had never seen these forms and that the signature on them was not his. Further, Klein confirmed his true email address to ▇▇▇▇▇▇▇▇▇▇▇▇ not ▇▇▇▇▇▇▇▇▇▇▇▇ as is reflected in the emails that MURCHISON had forwarded to Bannister.

## CONCLUSION

Based on the facts set forth above, your Affiant submits that there is probable cause to believe that violations of **18 U.S.C. § 1341**, *which prohibits the use of the US Postal Service for obtaining money or property in the execution of a fraudulent scheme*, have occurred.

8

By this Affidavit, I request that the Court issue a warrant authorizing the arrest of CLYDE ANTHONY MURCHISON, III.

Further your Affiant sayeth not.

_____
M.W. Hand, Special Agent
United States Secret Service

Sworn before me on this the  28th  day of January 2022.

_____
Kevin F. McDonald
United States Magistrate Judge

9